IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


DANIEL JOSEPH G.,[1]                              No. 3:18-cv-01011-HZ

                    Plaintiff,                    OPINION & ORDER

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.


Merrill Schneider
Schneider Kerr & Robichaux
P.O. Box 14490
Portland, OR 97293

        Attorney for Plaintiff,

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204
Joseph J. Langkamer

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party.

Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

Attorneys for Defendant.

HERNÁNDEZ, District Judge:

Plaintiff Daniel G. brings this action for judicial review of the Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The Commissioner's decision is reversed and remanded for the further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on February 4, 2014, alleging disability as of April 30, 2006. Tr. 13, 168–74, 177–86.[2] Plaintiff amended his alleged onset date to March 31, 1999, to correspond with his date last insured ("DLI") for DIB. Tr. 175. His application was denied at first and on reconsideration. Tr. 13. On February 10, 2017, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge ("ALJ"). Tr. 33–56. On April 10, 2017, the ALJ found Plaintiff not disabled. Tr. 27. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff alleged disability because of diabetes, arthritis, back pain, chronic pain syndrome, multiple joint pain, and "level conscience decreased." Tr. 200. He was 34 at the time of his amended alleged onset date and 52 at the time of the administrative hearing. Tr. 26. Plaintiff has a limited education and no past relevant work experience. *Id.*

---

[2] Citations to "Tr." refer to the page(s) in the official transcript of the administrative record, filed as Docket No. 12.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See, e.g., Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. 137 at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at

141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant can perform other work in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his amended alleged onset date of March 31, 1999. Tr. 22. Regarding Plaintiff's DIB claim, the ALJ found at step two that Plaintiff did not have a severe impairment or combination of impairments as of the DLI. Tr. 15-18. Thus, the ALJ found Plaintiff was not disabled regarding his DIB claim.

As to Plaintiff's SSI claim, the ALJ determined at steps two and three that as of February 4, 2014, Plaintiff has the following severe impairments: "Obesity, degenerative disc disease, diabetes mellitus, degenerative joint disease of the knees, right lateral femoral cutaneous neuropathy, hernia of the abdominal wall, a depressive disorder and an anxiety disorder." Tr. 22. Even so, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 18–20. The ALJ next determined that Plaintiff has the residual functional capacity to:

> [L]ift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. He can sit up to six hours in an eight-hour workday. He can stand and walk five hours total in an eight-hour workday. He is limited to occasional climbing ramps and stairs. He can never climb ladders and scaffolds. He can occasionally stoop, kneel, crouch, and crawl. He is precluded from working at unprotected heights, with heavy operating machinery, or operating a motor vehicle. He needs to avoid concentrated exposure to machinery causing vibrations. He needs to use a cane when traversing rough, uneven or sloped terrains. He is limited to simple and detailed tasks and simple and detailed decision-making. He is limited to routine and repetitive tasks.

Tr. 20. The ALJ found Plaintiff had no past relevant work at step four. Tr. 26. At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can

perform, such as advertising material distributor, price marker, and silver wrapper. Tr. 26–27.

Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 27.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193. Yet the court cannot not rely on reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff does not challenge the ALJ's denial of his DIB claim. The Court also declines to address Plaintiff's bare assertion that the ALJ erred by failing to find certain impairments severe at step two. *See Western Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 979 (9th Cir.

2012) (noting that courts "will not do an appellant's work for it, either by manufacturing its legal arguments, or by combing the record on its behalf for factual support"); *Carmickle v. Astrue*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issues not argued with specificity in briefing will not be addressed).

As to Plaintiff's SSI claim, Plaintiff contends the ALJ erred by: (1) improperly rejecting Plaintiff's subjective symptom testimony; (2) giving no weight to the opinion of treating physician, Samuel Fellin, D.O., and failing to adopt all the limitations assessed by examining physician Tatsuro Ogisu, M.D.; (3) improperly rejecting the lay witness statements; (4) failing to find Plaintiff's impairments met or equaled the severity of a listed impairment at step three; and (5) failing to meet the Commissioner's burden at step five. Because the Court finds the ALJ erroneously rejected Dr. Ogisu's opined limitations, despite affording great weight to the doctor's opinion, this case is reversed and remanded for further proceedings.

## I.     Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). In assessing a claimant's testimony about subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must present objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of this analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony about the severity of the symptoms. *Carmickle*, 533 F.3d at 1166; *Lingenfelter*, 504 F.3d at 1036.

The ALJ must make findings that are specific enough to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in the testimony. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039. In addition, conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility. *Morgan v. Comm'r Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999).

When the ALJ's findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Even so, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan,* 169 F.3d at 599.

At the hearing, Plaintiff testified that he had only been able to work sporadically since 1999 due to lower back and knee pain that began in "the late '80s" when he was "walking from a restaurant and a drunk driver ran [him] over." Tr. 39. His pain progressively worsened "over the last couple of years." Tr. 39. At the time of the hearing, Plaintiff was taking extended-release morphine and oxycodone for pain relief, which reportedly brought his pain levels down to a "six or seven" on a ten-point scale. Tr. 40. Plaintiff testified that he could walk three-blocks before needing to rest due to a burning pain in his right thigh. Tr. 41. On a "good day," he could sit or stand for 10-to-15 minutes at a time, for up to "three hours cumulative," and he would spend the

rest of the day lying down. Tr. 42–43. Plaintiff had to change positions often when lying down and had trouble sleeping through the night. Tr. 43. He also found stretching and physical therapy helped reduce his pain levels. Tr. 44. Plaintiff sometimes used a cane, and he sometimes borrowed his stepfather's walker when his back pain "really fired up." *Id.* When asked by the ALJ if he could perform a full-time job that required putting shoes inside boxes and permitted changing positions at will, Plaintiff responded that he "wouldn't be able to last three hours." Tr. 49. Plaintiff alleged he would need to lie down due to back pain and would forget how many shoes to put in the box due to the side-effects of his medication. Tr. 48–49. Plaintiff testified that Neurontin caused him to forget to turn the stove and water off while morphine made him drowsy. Finally, Plaintiff testified that the last time he was able to walk his son to school was when he twisted his ankle in 2012, which, according to Plaintiff, marked "the beginning of the end of everything." Tr. 49–50.

Plaintiff also completed a function report in March 2014. Tr. 217–24. He reported living with his two children and fiancée. Tr. 217. He claimed that "every joint in [his] body hurts, pops, grinds, snaps, [and] swells." *Id.* Plaintiff detailed that on a typical day he would wake up and take medication, "sit around for a while [or] wonder around," take a shower, get dressed, watch television, read, and go for a walk or make breakfast if he was not "hurting too bad." Tr. 218. He would supervise his children and feed the cats "sometimes," but his fiancée mainly took care of the household. *Id.* Plaintiff reported he could not sleep for more than "a couple" of hours because of constantly needing to change positions. *Id.* He sometimes needed help from his fiancée donning his pants and shoes, and at times needed reminders to take insulin. Tr. 219. Plaintiff could prepare quick, simple meals when his pain allowed. *Id.* He could vacuum for "short bursts," but his back would at times "give out" causing him to be "down for days." Tr. 220.

Plaintiff performed no other house or yard work because it was too strenuous on his back and knees. *Id.* He would leave the house twice a week for short periods of time. *Id.* Plaintiff could ride in a car or public transportation, but he did not feel comfortable going out alone or driving himself because of medication and fear of having "another seizure/episode." *Id.*

Plaintiff further reported he could shop for groceries once or twice a month depending on pain levels, but his fiancée handled most of the shopping. *Id.* He used to scuba dive, ski, ride motorcycles, hike, run, skateboard, play tennis, and "jump" before hurting his back and being diagnosed with type-II diabetes. Tr. 221. Plaintiff did not have, nor was he ever fired from a job over, problems getting along with others, but he was "grumpy," depressed, impatient, and did not partake in social activities. Tr. 222. Plaintiff reported he was limited in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, seeing, memory, completing tasks, and concentration. *Id.* He could follow written instructions well. Yet he had trouble remembering verbal instructions and others constantly told him to "pay more attention." *Id.* Plaintiff reported stress caused him confusion and seizure episodes. Tr. 223. He stated that he had "more side effects from diabetes than anything else[,] such as dizziness, blurred vision, weakness, confusion, drowsiness, [and] very shaky." Tr. 224. Plaintiff concluded his health had drastically declined "in the last five years." *Id.*

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 28. The ALJ gave three reasons in support of discounting Plaintiff's symptom testimony: (1) inconsistencies with Plaintiff's daily activities; (2) Plaintiff's responsiveness to conservative treatment; and (3) the lack of support from the objective medical

evidence. Because the ALJ's reasons were clear, convincing, and supported by substantial evidence, the Court finds the ALJ did not err in discounting Plaintiff's symptom allegations.

A.      Activities of Daily Living

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti*, 533 F.3d at 1039.  There are two grounds for using daily activities to support an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007). Even so, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick*, 157 F.3d at 722, and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping . . . does not in any way detract from his credibility." *Webb v. Barnhart,* 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir.2001)).

The ALJ's finding that Plaintiff's activities of daily living were inconsistent with the degree of limitation he alleged was sufficiently clear and convincing. Contrary to Plaintiff's assertion that the ALJ failed to identify how Plaintiff's activities were inconsistent with his alleged limitations, the ALJ specifically noted that Plaintiff's "report to Dr. Ogisu in August 2014 that he cannot lift anything at all is inconsistent with his reported ability to feed his animals, supervise his children, prepare simple meals, vacuum, and shop for groceries." Tr. 23 (citing Tr. 218–220, 497). Those activities require some lifting. *See Molina*, 674 F.3d at 1112 ("Even where [a claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (citation omitted). Additionally, the ALJ reasonably found Plaintiff's

reports of riding public transportation "suggests an ability to walk more than a couple of blocks at a time since buses typically do not drop off or pick up right in front of an individual's home." *Id.* The Court further notes that Plaintiff's alleged inability to sit or stand for longer than 15 minutes is inconsistent with his use of public transportation. Thus, the ALJ did not err in rejecting Plaintiff's symptom allegations based on Plaintiff's reported activities.

B.      Response to Conservative Treatment

The ALJ may consider the effectiveness of treatment in evaluating a claimant's symptom testimony. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) ("Factors that the adjudicator may consider . . . include . . . effectiveness or adverse side effects of any pain medication[.]"). That said, because "[c]ycles of improvement and debilitating symptoms are a common occurrence, . . . it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Instead, reports of improvement "must . . . be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Id.* Moreover, routine and conservative treatment can be enough to discount a claimant's subjective testimony about the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms are not "as all-disabling" as the claimant reported. *Tommasetti*, 533 F.3d at 1039. The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3).

Here, the ALJ found although Plaintiff "testified that he has experienced lower back and left knee pain since being hit by a truck as a pedestrian[,] the record does not document consistent complaints of knee and back pain, suggesting that his pain level is adequately controlled with prescribed medication." Tr. 22. The ALJ's finding was reasonable and based on substantial evidence. In September 2012, Plaintiff reported that before rolling his ankle while walking his son to school, he was doing well. He managed his pain with walking and home-based exercises, treated "mild exacerbations[s]" of his back pain with a muscle relaxant and Aleve, lost 70 pounds, and had stopped taking all narcotic pain medication for one year. Tr. 21, 374. Plaintiff's treating providers prescribed short courses of hydrocodone for additional pain control, but directed Plaintiff to find another primary care physician for long-term pain management because he violated his prior pain contract "repeatedly" and "constant[ly] demand[ed]" pain medication." Tr. 377, 379, 381–82. In November 2012, Plaintiff established primary care with Dr. Fellin. Tr. 382. In September 2013, Plaintiff entered into a narcotic pain management contract with Dr. Fellin. Tr. 395, 507. Plaintiff later saw Dr. Fellin infrequently, he consistently reported his back and knee pain were mostly stable, and he did not require any adjustments to his narcotic pain medications. Tr. 508–26.

Plaintiff argues the ALJ erred because in July 2011, Dr. Shenoy noted that Plaintiff had "failed conservative treatment" and would "benefit from getting further imaging like [an] MRI." Tr. 434. Dr. Shenoy, however, later advised Plaintiff that his MRI was "normal." Tr. 422. In October 2011, Plaintiff reported to Dr. Shenoy that his medication changes "helped overall" and he was "able to do all his regular activities." Tr. 424. Furthermore, as the ALJ accurately noted, "there [wa]s no indication that surgery ha[d] been recommended." Tr. 22. Contrary to Plaintiff's assertion, the ALJ noted that in November 2015, Plaintiff failed to follow through with weekly

physical therapy sessions despite the therapist's indication that Plaintiff showed "excellent potential to achieve [his] established goals." Tr. 589. The record shows that Plaintiff neglected to follow through with conservative treatment, not that he failed at it.

The ALJ also properly discounted Plaintiff's allegations of disabling mental health impairments. For example, despite Plaintiff's allegations of increased depression in October 2014, "the treatment records do not document such complaints to his treating doctors at that time." Tr. 23; *see also* Tr. 233, 508. Nor did Plaintiff receive any mental health treatment beyond infrequent trials of medications, which effectively alleviated his symptoms. *See*, *e.g.*, Tr. 421, 434, 515, 520. The ALJ thus did not err in discounting Plaintiff's symptoms allegations based on his receipt of conservative and effective treatment.

C.  Lack of Support from the Objective Medical Evidence

Under certain circumstances, the ALJ can discount a claimant's testimony when that testimony is unsupported by the objective medical evidence. *See Batson,* 359 F.3d at 1196 (consulting physician "did not believe that [the plaintiff's] 'graphic and expansive' pain symptoms could be explained on physical basis"); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (The ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony about her back pain). Yet lack of objective support cannot be the ALJ's sole reason for discounting a claimant's testimony: "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick,* 157 F.3d at 722.

The ALJ's finding that Plaintiff's symptom testimony was inconsistent with the objective medical evidence was supported by substantial evidence. The ALJ noted that the diagnostic images taken of Plaintiff's back and knees were within normal limitations and showed only mild

abnormalities. Tr. 21–22; *see also* Tr. 494 (July 2011 MRI of lumbar spine); Tr. 501-02 (January

2015 X-ray of knees). Dr. Fellin's November 2016 treatment note that Plaintiff's diabetes came

with polyneuropathy was unsupported by evidence of sensory deficits. Tr. 526. And Plaintiff's

alleged "seizure episodes" were not evident in the medical records, which showed "normal head

CT and normal EEG." Tr. 23, 340–41. Finally, except for occasional depressed mood and an

antalgic gate, Plaintiff's mental status and physical examinations were largely unremarkable.

*See*, *e.g.*, Tr. 325–26, 395, 422, 497–500, 520, 506. As a result, the ALJ did not err in finding

Plaintiff's symptom allegations were undermined by the objective evidence.

## II.    Medical Opinion Evidence

Plaintiff argues that the ALJ erred by giving no weight to the opinion of treating

physician, Samuel Fellin, D.O., and by failing to adopt all the limitations assessed by examining

physician Tatsuro Ogisu, M.D., despite giving great weight to the doctor's opinion. If no conflict

arises between medical source opinions, the ALJ generally must accord greater weight to the

opinion of an examining physician over that of a reviewing physician. *Lester v. Chater,* 81 F.3d

821, 830 (9th Cir. 1995). If a treating or examining physician's opinion is not contradicted by

another physician, the ALJ may reject it only for clear and convincing reasons. *Id.*; *Widmark v.

Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006). Even if one physician is contradicted by another

physician, the ALJ may not reject the opinion without providing specific and legitimate reasons

supported by substantial evidence in the record. *Orn,* 495 F.3d at 632; *Widmark*, 454 F.3d at

1066. Even so, the ALJ may reject physician opinions that are "brief, conclusory, and

inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir.

2005).

A.  Dr. Fellin

In February 2017, Dr. Fellin completed an assessment of Plaintiff's impairments on a form supplied by Plaintiff's attorney. Tr. 591–94. Dr. Fellin said that he had treated Plaintiff for "5-7 years" as his primary care provider. Tr. 591. The doctor detailed that Plaintiff's diagnoses included "lumbosacral radiculopathy, spinal stenosis, hypertension, diabetes mellitus, hernia, [and] multiple joint arthritis." *Id.* Dr. Fellin reported Plaintiff's primary symptoms were radiculopathy, chronic back pain, and multiple joint arthritis. *Id.* The doctor opined that Plaintiff could only lift 10 pounds or less; stand and/or walk for "5-10 minutes" at a time, for less than two hours in an eight-hour day; sit for 20 minutes at a time, for less than two hours in an eight-hour day; should spend the remainder of the day lying down or shifting positions; and was limited in his upper and lower extremities. Tr. 592.

Dr. Fellin further opined that Plaintiff could never climb, balance, stoop, bend, kneel, crouch, or crawl; occasionally reach and handle; frequently finger and feel; and was limited in walking because of pain and decreased strength. Tr. 592–93. The doctor checked a box on the form indicating Plaintiff met the requirements of listed impairment ("Listing") 1.04C, "Disorders of the Spine." Tr. 593; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. In support of that determination, Dr. Fellin cited Plaintiff's July 2011 lumbar MRI. Tr. 593. The doctor also said that the combination of Plaintiff's diabetes and multiple joint arthritis equaled the severity of Listing 1.04. *Id.* In addition, Dr. Fellin detailed that Plaintiff's attention and concentration would be impaired so much that he could not be expected to perform even simple work tasks for "most of the week," and he "wouldn't be able to go [into work] most days due to impairment." Tr. 594. Finally, Dr. Fellin opined that the limitations he assessed had been present on, or before, March 1, 1999. *Id.*

The ALJ gave sufficiently specific and legitimate reasons for rejecting Dr. Fellin's opinion. Tr. 25. First, as the ALJ noted, Dr. Fellin "provided little explanation for his opinion." Tr. 25. Plaintiff contends that Dr. Fellin's mere recitation of Plaintiff's diagnoses and reference to four treatment-note dates amounts to a "substantial explanation." Pl.'s Opening Br. 9, ECF 13; Tr. 593. Dr. Fellin's opinion that Plaintiff had "insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both* upper extremities" finds no support in the record. Tr. 593 (emphasis added). Dr. Fellin's treatment notes do not document any need for, or prescription of, an assistive device that limits the functioning of both of Plaintiff's arms. *See* Tr. 326, 383–85, 525. On the few occasions where Plaintiff's use of a cane was documented, the notes state that he used it only sparingly, "did not bring it with" him to a physical examination, was using "the cane incorrectly but [wa]s not open to teaching regarding proper cane use," and needed to use a cane only when "traversing rough, uneven, and sloped surfaces." Tr. 44, 377, 497, 500. Moreover, Dr. Shenoy described the July 2011 lumbar MRI that Dr. Fellin cited in support of his opinion as "normal," and showed that Plaintiff "need[ed] to work on conditioning his back." Tr. 422. Although Plaintiff advocates for his preferred reading of the medical evidence, variable interpretations of the medical evidence are insignificant when, as is the case here, the ALJ's interpretation is reasonable and based on substantial evidence. *Batson*, 359 F.3d at 1193.

Second, the ALJ reasonably found Dr. Fellin's extremely limiting opinion was inconsistent with the treatment notes, "which document[ed] only conservative treatment for [Plaintiff's] musculoskeletal complaints." Tr. 25. As discussed, the ALJ's finding of conservative treatment was supported by substantial evidence and so suffices as a specific and legitimate reason for rejecting Dr. Fellin's opinion. *See Ghanim*, 763 F.3d at 1161 ("A conflict

between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider.") (citing *Molina*, 674 F.3d at 1111–12). Finally, the ALJ rejected Dr. Fellin's opinion because the doctor opined that Plaintiff was limited by his impairments on, or before, March 1, 1999, but had only been treating Plaintiff for five to seven years when he rendered his February 2017 opinion. Tr. 25. Plaintiff does not address this glaring discrepancy. Thus, the ALJ did not err in his rejection of Dr. Fellin's opinion.

B.  Dr. Ogisu

In August 2014, Dr. Ogisu conducted a comprehensive musculoskeletal examination of Plaintiff. Tr. 496–500. Dr. Ogisu assessed Plaintiff as limited by: chronic lower back pain, with "[n]o associated radiculopathy[] suspected"; bilateral knee pain because of left patellofemoral syndrome and intermittent patellar subluxation, with "some degeneration of the weightbearing joints[] likely to be present but not very advanced"; right lateral femoral cutaneous neuropathy, and "morbid obesity." Tr. 499–500. Dr. Ogisu opined that Plaintiff could sit and stand/walk for up to four hours but less than six hours in an eight-hour day; lift and carry up to 10 pounds occasionally; and required use of his cane "when traversing rough, uneven, and sloped surfaces." Tr. 500.

Despite giving Dr. Ogisu's opinion "great weight" because it was "consistent with his physical examination findings and x-rays showing bilateral knee degenerative joint disease," the ALJ erred by failing to adopt Dr. Ogisu's 10-pound lifting limitation and less-than-six-hours sitting limitation without explanation. Tr. 24. The Commissioner concedes the ALJ erred but argues any error was rendered harmless by the vocational expert's ("VE") hearing testimony. The Commissioner's argument is unavailing. The VE testified that the three light-work jobs he

identified "would fit" with an individual who could sit for up to five hours, stand and walk for five hours combined, and lift 10 pounds occasionally. Tr. 54. The ALJ's RFC determination, however, requires up to six hours of sitting, which is more demanding than the hypothetical addressed by the VE and Dr. Ogisu's opinion that Plaintiff could sit for "less than 6 hours." Tr. 20, 54, 500; *see also* 20 C.F.R. §§ 404.1545, 416.945 (the RFC is the most a person can do, considering his or her physical or mental impairments). In posing hypothetical questions to the VE, an ALJ must include all of the claimant's functional limitations which substantial evidence support. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). Because the hypothetical addressed by the VE was defective, "the vocational expert's opinion has no evidentiary value," and cannot render the ALJ's error harmless. *Lewis v. Apfel*, 236 F.3d 503, 518 (9th Cir. 2001).

Further, an ALJ has an affirmative duty to resolve any obvious or apparent conflicts between the Dictionary of Occupational Titles ("DOT") and VE testimony. *See Massachi v. Astrue*, 486 F.3d 1149, 1152–53 (9th Cir. 2007); *Lamear v. Berryhill*, 365 F.3d 1201, 1205 (9th Cir. 2017); SSR 00–04p, 2000 WL 1898704, at *4 (Dec. 4, 2000). When such a conflict arises, the ALJ "must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . rather than on the DOT." SSR 00–4p, at *2. The three jobs the ALJ found Plaintiff able to perform at step five are all classified as "Light Work," and require the ability to lift 20 pounds "occasionally," or up to "1/3 of the time," and 10 pounds "frequently," or "from 1/3 to 2/3 of the time." *See* DOT 230.687–010, *available at* 1991 WL 672162 (advertising material distributor); DOT 209.587–034, *available at* 1991 WL 671802 (price marker); DOT 318.687–018, *available at* 1991 WL 672757 (silver wrapper). Dr. Ogisu, however, opined that Plaintiff could only lift up to 10 pounds occasionally, with no frequent lifting of any weight. Tr. 500. Even assuming the VE's testimony that, based on his

"[t]hirty years as a rehab counselor," Plaintiff's five-hour sitting limitation was compatible with the light-level jobs[3] the VE identified was a reasonable explanation for deviating from the DOT, the VE never addressed how Dr. Ogisu's 10-pound occasional lifting limitation fit with the DOT's specification that those jobs require the ability to lift 20 pounds occasionally, and 10 pounds frequently. Tr. 51–55. As a result, the ALJ's failure to include the full extent of Dr. Ogisu's opined limitations, despite assigning great weight to the physician's opinion, was harmful error.

## III. Lay Witness Testimony

Plaintiff contends the ALJ erred in discounting the lay witness testimony of Plaintiff's fiancée, Angie S., daughter, Autum G., and neighbor, Laura K. Pl.'s Opening Br. 12–15. Lay testimony about a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must consider." *Molina*, 674 F.3d at 1114. The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine*, 574 F.3d at 694. The ALJ is not required, however, "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114. If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id.* Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id.* at 1117, 1122.

---

[3] As recognized by the ALJ, light work jobs typically require "being on your feet for six hours in an eight-hour day." Tr. 51; *see also* SSR 83–10, 1983 WL 31251, at *5 (Jan. 1, 1983) ("[L]ight work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.").

Because the lay witnesses did not describe any limitations beyond those already alleged by Plaintiff, the Court need not discuss Plaintiff's unelaborated assignments of error and preferred interpretation of the record. *Compare* Tr. 38–50, 217–24, *with* Tr. 240–47, 264–67. As discussed, the ALJ gave sufficiently clear and convincing reasons for rejecting Plaintiff's symptom testimony; those reasons apply with equal force to the lay witness statements. In other words, even assuming the ALJ's reasons for rejecting the lay witness statements were not germane, that error would have been harmless. Thus, the Court finds no basis for reversing the ALJ's decision based on his treatment of the lay witness testimony.

## IV.    Step Three

At step three, the ALJ found that "[s]ince February 4, 2014, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 18. At step three, the ALJ must determine whether a claimant's impairments meet or equal one of the listed impairments and are so severe that they preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The criteria for the listed impairments are enumerated in 20 C.F.R. part 404, subpart P, appendix 1. The plaintiff bears the burden of proving that he has an impairment that meets or equals a listed impairment. *Burch*, 400 F.3d at 683. A plaintiff must show that he meets all the criteria in the Listing to show medical equivalence. *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013).

Plaintiff asserts the ALJ erred because Plaintiff "lacks the ability to ambulate effectively, meeting or equaling Listings 1.02 and 1.04C." Pl.'s Opening Br. 12. Plaintiff, however, "has offered no theory, plausible or otherwise, as to how" he met or equaled the severity of Listings 1.02 or 1.04C. *Lewis*, 236 F.3d at 514. "A generalized assertion of functional problems is not enough to establish disability at step three." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999)

(citation omitted). And Plaintiff's argument that Dr. Fellin's opinion establishes Plaintiff met the requirements of Listing 1.04C is unavailing. As discussed, the ALJ properly rejected Dr. Fellin's assessment, including the doctor's opinion that Plaintiff met Listing 1.04C. Plaintiff has thus not carried his burden of establishing his impairments met or equaled the severity of a Listed impairment. The ALJ did not err at step three.

## V.     Step Five

Plaintiff argues the ALJ erred at step five by presenting an incomplete hypothetical to the VE. At step five of the sequential analysis, the burden of proof rests with the Commissioner to establish whether other work exists in the national economy that an individual of the claimant's age, education, work experience, and RFC can perform. *See* 20 C.F.R. § 404.1520(g); *Tackett*, 180 F.3d at 1099. In making this finding, an ALJ relies "primarily" on the DOT for information about the requirements of other work in the national economy. SSR 00–04p, at *2. An ALJ may also rely on a VE as a source of occupational evidence. *Id.* In posing hypothetical questions to the VE to determine whether other work exists that a claimant can perform, an ALJ must include all of the claimant's functional limitations which substantial evidence support. *Osenbrock*, 240 F.3d at 1162.

Plaintiff's argument is based on his previous assignments of error. As discussed, the ALJ properly discounted Plaintiff's subjective allegations, the lay witness statements, and Dr. Fellin's medical opinion. The ALJ, however, committed harmful error by omitting Dr. Ogisu's lifting and sitting limitations from the RFC and the hypothetical presented to the VE. Tr. 20, 50–51. "The hypothetical an ALJ poses to a [VE], which derives from the RFC, must set out all the limitations and restrictions of the particular claimant. Thus, an RFC that fails to take into account

a claimant's limitations is defective." *See Valentine*, 574 F.3d at 690. The ALJ thus failed to meet the Commissioner's step-five burden.

## VI. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (When all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule."). The "ordinary remand rule" is the proper course except in rare circumstances. *Treichler*, 775 F.3d at 1101.

The Court finds that the ordinary remand rule is the proper course. Although the ALJ failed to provide legally sufficient reasons for rejecting Dr. Ogisu's assessed limitations, Dr. Ogisu's opinion conflicts with the reports of the state agency physicians. *See*, *e.g.*, Tr. 75–76, 98–99. An award for benefits is unwarranted because outstanding issues must be resolved about Plaintiff's lifting limitations, and further proceedings would be useful in resolving the conflicting medical evidence. Therefore, the Court remands this case for further proceedings.

## CONCLUSION

For these reasons, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

IT IS SO ORDERED.


Dated this _____ day of August, 2019.


_____
MARCO A. HERNÁNDEZ
United States District Judge